The **PHILADELPHIA HOUSING AUTHORITY** et al., Plaintiffs,

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION** et al., Defendants.

**NALCO PLUMBING & HEATING CO.** et al., Plaintiffs,

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION** et al., Defendants.

Civ. A. Nos. 41773, 69–1256 SC.

United States District Court, E. D. Pennsylvania.

Jan. 29, 1971.

James O. Sullivan, and Peter H. Flournoy, and Sullivan, Marinos, Augustine & Delafield, San Diego, Cal., for class representatives.

George W. Liebmann, of Baltimore, Md., and Patrick T. Ryan, of Philadelphia, Pa., for Contractors Settlement Committee.

William E. Willis, and Sullivan & Cromwell, New York City, for defendants.

Duke W. Thomas, and Vorys, Sater, Seymour & Pease, Columbus, Ohio, Lawrence Walner, Chicago, Ill., John A. Cochrane, and Cochrane & Bresnahan, St. Paul, Minn., for nonsettling plaintiffs.

Morton I. Hamburg, and Moore, Berson, Hamburg & Bernstein, New York City, Walter W. Reckless, and Cobourn, Smith, Rohrbacher & Gibson, Toledo, Ohio, Lawrence Walner, Chicago, Ill., for fee petitioners.

### MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

HARVEY, District Judge:

On July 16, 1970, this Court entered herein Settlement Order No. 2 pertaining to a proposed $2,000,000 settlement of claims of plumbing and general contractors in this multidistrict antitrust litigation. Such Order provided for the establishment of a temporary national class of plumbing and general contractors having claims against the settling defendants and for the publication and sending of notices to prospective members of the temporary settlement class who were given the right to either accept the proposed settlement or to exclude themselves therefrom and proceed with the prosecution of any claims they might have against the defendant manufacturers.

In Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 323 F.Supp. 364 (E.D. Pa., 1970), a motion filed by certain plaintiffs herein to vacate Settlement Order No. 2 was denied. Reference is hereby made to that opinion for a full discussion of the history of this litigation, of the background of this proposed settlement and of the provisions of such Order.

Settlement Order No. 2 provided for a hearing before this Court on December 22, 1970 to determine whether such proposed settlement should be finally approved. Matters to be presented to the Court at that hearing included whether applications for attorneys fees and other disbursements should be approved, whether the proposed temporary settlement class should be determined and ordered to be a final and permanent class under Rule 23 of the Federal Rules of Civil Procedure and whether final judgments should be entered against those plaintiffs and members of the temporary settlement class who had not excluded themselves as permitted in the proposed settlement agreement. As this Court noted in its opinion of September 24, 1970 (at page 372):

"Provided that the parties do not withdraw and the proposed settlement is presented to this Court at a final hearing, extensive additional data received by way of responses to the notices published or sent to prospective members of the proposed class will be available to the Court to aid it in finally determining whether the settlement is fair and adequate and wheth-

er the proposed national class is a proper one."

Such hearing has now been held as scheduled. Based upon the arguments presented at such hearing, this Court's knowledge of the history and nature of this litigation, and the pleadings, affidavits and exhibits submitted in support of and in opposition to the proposed settlement including the reports filed by the Contractors Settlement Committee, this Court makes the findings of fact and conclusions of law set forth hereinafter.

### Findings of Fact

1. The findings of fact heretofore contained in this Court's opinion in Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, *supra*, are hereby reaffirmed and are incorporated herein.

2. In Settlement Order No. 2, this Court approved a notice procedure designed to present the proposed settlement to prospective members of the class and to secure additional information from them to aid the Court in making an informed judgment as to whether the settlement should be approved. Under the procedure adopted and followed here, prospective class members could: (a) accept the proposed settlement; (b) elect to exclude themselves and litigate their claims even though the settlement was ultimately approved; or (c) do nothing, in which case they would be bound by any judgment entered herein.

3. The Contractors Settlement Committee established in Settlement Order No. 2 has fully complied with all of the requirements of said Order, and the notice procedures prescribed in said Order have been completed in conformity with Settlement Order No. 2 and Rule 23 of the Federal Rules of Civil Procedure.

4. The notice given the prospective members of the Temporary Settlement Class pursuant to Settlement Order No. 2 fully, fairly and accurately informed the members of the Class of all material elements of the proposed settlement, and their rights and obligations in connection therewith, and said notice was the best notice practicable under the circumstances. The notice which fairly advised the Class of their options was published in the September, 1970 issue of the following trade magazines, i. e. the *Contractor*, the *Plumbing, Heating, Cooling Business*, the *Professional Builder* and the *House and Home*. In addition, counsel for the Class Representatives contracted with Dun and Bradstreet for mailing lists of all general building contractors and all plumbing, heating (except electrical) and air conditioning contractors. Utilizing these lists, more than 243,000 individual notices were mailed to contractors on or before September 1, 1970. This number exceeds the Department of Commerce figure for domestic contractors. No other practicable means existed for the determination and notification of persons and firms who might be members of the class.

5. The Temporary Settlement Class established in Settlement Order No. 2 satisfies the requirements of Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure. Said Class is homogeneous; the members of the Class are so numerous that joinder of all such members is impracticable; there exist questions of law and fact common to the Class; said common questions predominate over any question affecting only individual members of the Class; and a class action is superior to all other available methods for the fair and efficient adjudication of these claims.

6. The claims of the Class Representatives, plaintiffs in Civil Action No. 69–1256SC, designated in Settlement Order No. 2, are typical of the claims of the Class; said Class Representatives, and their counsel, have and will fairly and adequately protect the interests of the Class; and, therefore, said Class Representatives satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

7. On November 16, 1970, pursuant to extensions of time previously granted

by this Court, the Contractors Settlement Committee filed its report. The Committee reported that on November 13, 1970, it had notified all those whose exclusions and/or claims were challenged by the Committee, requesting such persons to provide the Committee with sufficient facts supporting their exclusion or claims to alleviate the grounds for objection thereto. An interim hearing was held on November 30, 1970, so that all persons whose exclusions or claims were challenged would be afforded an opportunity for a full and complete hearing prior to this Court's ruling on the Committee's recommendations. Notice of such hearing was sent to all those whose exclusions or claims had been challenged.

8. On December 7, 1970, notice of the hearing to be held on December 22, 1970 was sent to all prospective members of the proposed class who had filed a Sworn Statement of Claim and whose claim had been allowed, in whole or in part, and to all those whose exclusions or claims had been disallowed by the Court.

9. The final Report of the Contractors Settlement Committee was filed on December 11, 1970, indicating full compliance by the Committee with the requirements of Settlement Order No. 2.

10. 1,756 members of the Class timely filed claims and accepted the settlement. 565 bona fide notices of exclusion were timely filed. Some 294 of those excluded, or approximately .001% of all the prospective class members, indicated an intention to litigate. However, 212 entities included in the total of 294 would-be litigants functioned primarily as builder-owners and are therefore not true members of the Class. Only 82 class members have in fact evidenced a preference for litigation over settlement. Plaintiffs in four of the eleven actions who originally expressed opposition to Settlement Order No. 2 have now filed claims and accepted the settlement, including the plaintiff and its attorney, Morton Hamburg, who led the opposition. The informative results obtained from polling the Class indicate that the proposed settlement is fair and reasonable.

11. Under the terms of the settlement agreement, the settling defendants were given the option to withdraw from the settlement if, in their judgment, there were insufficient acceptances by members of the Class. The settling defendants did not exercise this option. Similarly, the settling defendants had the right to request that the settlement sum be reduced by an amount which would be "appropriate in view of the relative position of those class members who have requested exclusion." The settling defendants did not exercise this option either.

12. At the hearing held on December 22, 1970, an opportunity was accorded to all in attendance to express their views as to the fairness of the proposed settlement. No opposition to the proposed settlement was stated on behalf of any general contractors. Only three attorneys (Messrs. Walner, Cochrane and Thomas, representing, in the aggregate, 24 plumbing contractor litigants) spoke in opposition to the settlement. Although opposing the settlement, Messrs. Thomas and Walner also represented some clients who had accepted the settlement and filed claims with the Settlement Committee.

13. The United States Court of Appeals for the Third Circuit has now affirmed the convictions of certain defendants herein in the criminal prosecution brought by the government against such defendants and certain of their officers. United States v. American Radiator and Standard Sanitary Corporation, 433 F.2d 174 (3d Cir. 1970). That opinion does not substantially reduce the burden placed upon the settling plaintiffs in this litigation to prove both liability and the amount of their damages. Only three of the settling defendants here were tried and convicted in that case. The other defendants who are parties to the settlement agreement entered pleas of nolo contendere in the criminal case. The conspiracy proved by the govern-

ment in the criminal case was of limited duration and was substantially shorter than the period alleged in these civil cases.

14. The settling defendants here have indicated their intention to vigorously contest the claims asserted by the settling plaintiffs, both as to liability and damages. That the defendants have at their disposal "forceful and direct" economic evidence in support of their position was noted by the Third Circuit in United States v. American Radiator and Standard Sanitary Corporation, *supra,* at page 197. The right of these settling plaintiffs to recover is being challenged not only by the defendants but also by other plaintiffs located at other levels of the chain of distribution. In view of the problems of proof which plaintiffs must overcome and the legal theories which must be established, the recommendation by numerous experienced antitrust counsel that this settlement be approved is entitled to great weight. Schleiff v. Chesapeake and Ohio Railway Co., *infra,* 43 F.R.D. at page 179.

15. Because of the complexity and uncertainty of the legal and factual issues presented in this litigation, continuation of the litigation by members of the Class would be costly and lengthy, and recovery of any, and particularly of significant, damages by the members of the Class is subject to some doubt.

16. The following factors therefore support the reasonableness of the proposed settlement: (1) the uncertainty of the ability of these plaintiffs to prove liability, injury and/or the amount of damages; (2) the approval of the settlement by the overwhelming majority of the counsel for the members of the Temporary Settlement Class who have instituted suit on their own behalf and the very small number (in fact only three) of said counsel who have opposed approval of the settlement; (3) the contention of the other categories of claimants in this litigation that they, and not the so-called "contractors class," are en-

titled to any recovery; (4) the fact that the time period and range of products encompassed within the Government's evidence in the criminal case is much more limited than the allegations in most of the complaints filed by members of this Class; and (5) the fact that the settling defendants deny any violation of the antitrust laws and any overcharge to the members of this or any category of claimants, and can be expected to litigate all issues fully, including appeals if necessary.

17. At the December 22, 1970 hearing, Mr. Lawrence Walner submitted a "Motion to Allow Claim" on behalf of one of his clients, Ace Heating and Plumbing Co., Inc. ("Ace"). That motion was denied by this Court. Ace's claim initially was challenged by the Contractors' Settlement Committee on November 13, 1970, and Mr. Walner was given notice of the November 30, 1970 hearing. Mr. Walner has been involved in this litigation for some time and has been aware of the information necessary to file a sworn statement of claim at least since the entry on July 16, 1970 of Settlement Order No. 2, which had appended to it a copy of the claim form used by the Settlement Committee. Mr. Walner was given adequate time to respond to the Committee's challenge and was given the opportunity to correct the factual deficiencies of the Ace claim prior to and at the November 30th hearing. Mr. Walner appeared at the November 30th hearing and, after consideration of his written response to the Committee's challenge, his oral argument and the Committee's challenge to the Ace claim, this Court sustained that challenge in full due to Mr. Walner's totally inadequate response. This Court has again reviewed Mr. Walner's motion and his arguments. No additional facts or circumstances have been presented to this Court which would cause it to alter its previous ruling that the Ace claim should be denied.

18. No opposition was expressed at the final hearing to the petition of the Settlement Committee for reimburse-

ment for the expenses of administration in the total amount of $94,042.34. Such expenditures were reasonable, as substantiated by the affidavits filed and are hereby approved. No opposition was stated to the application, made by Mr. Sullivan on behalf of all counsel who have been representing active litigants and who have accepted the settlement on behalf of their clients, for reimbursement of their out-of-pocket litigation expenses. These expenses totaled $26,132.93 for all the attorneys involved, a sum which is reasonable for this type of litigation, and such expenses are hereby approved.

19. James O. Sullivan, counsel for the Class Representative, has filed herein an application for attorneys' fees, setting forth in detail the legal services performed by his firm and the time expended and requesting the Court to award fees to his firm and to those other plaintiffs' counsel who have worked with him to effect the settlement. Such application set forth the identity of all counsel who would share in the attorneys' fees and suggested a proposed allocation of such fees. At the request of the Court, affidavits have now been filed by all of such other counsel, stating the nature of the legal services rendered, the extent that such counsel contributed to the creation of the settlement fund, and the time expended by the various firms which would share in an award of attorneys' fees. This Court finds that the abilities and standing of petitioning counsel are high and that the results achieved by them in this case were quite favorable to the members of the Class. See Philadelphia Electric Company v. Anaconda American Brass Company, 47 F.R.D. 557, 559 (E.D.Pa.1969).

20. Claimants who have filed suits included in this litigation have obligations to pay fees to their attorneys in amounts comparable percentage-wise to the amounts to be allowed herein. To avoid the payment of double fees by such claimants, the attorneys' fees to be allowed herein should not be charged against the amounts to be distributed to claimants whose suits are pending in this litigation. Furthermore, claimants who are not litigants should be required to pay their fair share of the out-of-pocket expenses of those claimants who have actually filed suit and who thereby brought about the creation of the settlement fund.

21. This Court finds that a fair and reasonable aggregate attorneys' fee herein is 25% of that portion of the settlement fund remaining after the deductions specified herein have been made. From the total amount of the settlement fund plus interest, there should be deducted (1) the expenses of the Settlement Committee in the amount of $94,042.34, and (2) the out-of-pocket litigation expenses of the active litigants in the amount of $26,132.93. From this balance there should then be deducted the amounts to be distributed to those members of the Class who have filed actions in this litigation. The aggregate attorneys' fees allowed herein will be an amount equal to 25% of the remaining balance after such deductions, and such amount, together with the fee allowed herein to Mr. Hamburg, should be deducted from the amount to be distributed to the non-litigating claimants. The Contractors Settlement Committee is directed to file as soon as practicable a revised distribution schedule prepared in accordance with the formula approved herein.

22. The aggregate amount of the attorneys' fees allowed herein should be divided into 14 equal shares, with Mr. Sullivan's firm receiving 3 of such shares and the remaining 11 shares being divided among the contributing attorneys as recommended in Mr. Sullivan's application for the award of attorneys' fees. Each attorney or firm will receive the share (either one share or less) recommended by Mr. Sullivan except that the total number of shares will be 14 rather than 13, as recommended, and Mr. Sullivan will receive 3 of such shares (or approximately 2.1%) rather

than 2 of such shares (or approximately 1.5%), as recommended.

23. Applications for attorneys' fees have also been filed by three other attorneys representing plaintiffs in this litigation, Messrs. Hamburg, Walner and Reckless. After hearing argument in support of and in opposition to such applications at the December 22, 1970 hearing, this Court indicated that it would not allow attorneys' fees to Messrs. Walner and Reckless but that it would consider a partial allowance to Mr. Hamburg. Since the hearing, Mr. Walner has filed a motion to reconsider his previous application and has requested an allowance of $30,000. At the request of the Court, Mr. Hamburg has now submitted further information in support of his application.

24. The application of Mr. Reckless for an attorney's fee is denied, as it does not appear that this attorney contributed in any meaningful way to the creation of the settlement fund.

25. The application of Mr. Walner for an attorney's fee is denied, as is his motion to reconsider his fee petition. On behalf of certain claimants in this litigation, Mr. Walner accepted the proposed settlement and filed claims with the Committee. On behalf of certain other claimants, Mr. Walner filed exclusions, electing to litigate such claims. Mr. Walner appeared before this Court on December 22, 1970 and opposed final approval of the settlement. In view of the clearly conflicting positions that he has taken and continues to take in this litigation, this Court concludes that he is not entitled to an attorney's fee for services rendered in contributing to the creation of the settlement fund.

26. The application of Mr. Hamburg for allowance of an attorney's fee is granted in part, and a fee of $5,000 is approved as reasonable for his firm. Although originally opposing the settlement, Mr. Hamburg subsequently filed a formal claim on behalf of the one client of his who still remains in this litigation. Mr. Hamburg is therefore not

now taking an inconsistent position concerning the proposed settlement. During the period from October, 1969 to March 1, 1970, Mr. Hamburg actively contributed to the commencement of and conduct of settlement negotiations. He is entitled to a reasonable fee for his efforts at this early stage of the negotiations, before Mr. Sullivan assumed the leadership on behalf of the settling plaintiffs. In fixing a fee to be allowed to Mr. Hamburg, this Court notes that he will receive in addition some $8,000 directly from his client under the claim that such client has filed with the Committee.

*Conclusions of Law*

1. The conclusions of law heretofore contained in this Court's opinion in Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, *supra*, are hereby reaffirmed and are incorporated herein.

2. The claim of Ace Heating and Plumbing Co., Inc., is hereby denied.

3. It is not the function of this Court in determining whether to approve the proposed settlement to weigh or try disputed issues of law or fact. Schleiff v. Chesapeake and Ohio Railway Co., 43 F.R.D. 175, 178 (S.D.N.Y.1967); West Virginia v. Chas. Pfizer & Co., Inc., 314 F.Supp. 710 (S.D.N.Y.1970). The Court should, however, compare the recovery under the proposed settlement to the likely rewards of litigation. Protective Committee, etc. v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 20 L. Ed.2d 1 (1968).

4. The proposed settlement is hereby approved as fair and reasonable. West Virginia v. Chas. Pfizer & Co., Inc., *supra*.

5. The temporary settlement class is hereby designated as a final and permanent class.

6. Final judgment should be entered herein in those cases in which the plaintiffs have not properly excluded themselves under the terms of the settlement agreement.

7. There is no just reason for delay in the entry of final judgments in any of the cases hereby affected.

8. The applications for attorneys' fees filed by Lawrence Walner and Walter W. Reckless are hereby denied.

9. The other fees and expenses requested are hereby approved in the amounts hereinbefore set forth.

Counsel are directed to submit an appropriate Order and Judgment prepared in accordance with the findings and conclusions herein made.